T.C. Memo. 2020-1

UNITED STATES TAX COURT

CLARK J. GEBMAN AND REBECCA GEBMAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 15941-12, 13905-16.          Filed January 2, 2020.

Clark J. Gebman and Rebecca Gebman, pro sese.

<u>Alex Shlivko</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

NEGA, <u>Judge</u>:  In these consolidated cases, respondent determined deficiencies and penalties with respect to petitioners' jointly filed Federal income tax returns as follows:[1]

---

[1]Unless otherwise indicated, all section references are to the Internal
(continued...)

**[*2]** Clark J. Gebman and Rebecca Gebman (Docket No. 15941-12)

| Year | Deficiency | Penalty sec. 6662(a) |
|---|---|---|
| 2007 | $213,621 | $42,724 |
| 2008 | 13,244 | 2,649 |
| 2009 | 43,973 | 8,795 |
| 2010 | 56,612 | 11,322 |

Clark J. Gebman and Rebecca Gebman (Docket No. 13905-16)

| Year | Deficiency | Penalty sec. 6662(a) |
|---|---|---|
| 2012 | $20,340 | $3,668 |
| 2013 | 34,375 | 6,475 |
| 2014 | 15,881 | 2,890 |

After concessions,[2] the issues for decision are whether: (1) petitioners are entitled to deductions claimed on Schedule E, Supplemental Income and Loss, in amounts greater than respondent has allowed for 2007; (2) petitioners are entitled

---

[1](...continued)
Revenue Code (Code) in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[2]Petitioners conceded that they were not entitled to exclude from gross income rental income of $4,920 they received in 2007.

**[\*3]** to deduct a net operating loss (NOL) for 2007; (3) petitioners failed to include in their gross income individual retirement account (IRA) distributions totaling $210,423 for 2007; (4) petitioners are liable for the 10% additional tax imposed by section 72(t) on the IRA distributions for 2007; (5) Rebecca Gebman is entitled to innocent spouse relief under section 6015 for the years at issue; (6) petitioners are liable for an accuracy-related penalty under section 6662(a) for 2007; and (7) the Court should impose a section 6673(a) penalty. The additional adjustments made in the statutory notices of deficiency with respect to tax years 2008, 2009, 2010, 2012, 2013, and 2014 result from the disallowance of the claimed remainder of the NOL left to be carried over from 2007, computational adjustments related thereto,[3] and accuracy-related penalties under section 6662(a)[4] and are determinable upon final resolution of all issues in dispute.[5]

---

[3]Respondent determined some itemized deductions should be disallowed subject to the sec. 68 limitation and a claimed child tax credit should be disallowed under sec. 151(d).

[4]The sec. 6662(a) penalties for remaining years 2008, 2009, 2010, 2012, 2013, and 2014 stem solely from the disallowed NOL carried forward from 2007. Thus, the adjustments and the penalties determined for these years will depend solely on this Court's determination of whether any of that NOL remained to be applied for years after 2007.

[5]This Court previously issued an opinion, Gebman v. Commissioner, T.C. Memo. 2017-184, in the case at docket No. 15941-12. The opinion mainly
(continued...)

**[*4]**                          FINDINGS OF FACT

On September 10, 2018, the Court's order to show cause was made absolute, and under Rule 91(f)(3) the facts and exhibits set forth in respondent's proposed stipulation of facts were deemed established for purposes of these cases. Respondent's proposed stipulation of facts and the attached exhibits are incorporated herein by this reference. When the petitions were filed, petitioners resided in the State of New York.

Clark J. Gebman and Mrs. Gebman have been married since 1986 and remained married at the time of trial. Mr. Gebman is a certified general appraiser. Mrs. Gebman holds a bachelor's degree in biology from St. Joseph's College and a law degree from Brooklyn Law School, where she took one basic Federal income tax course. In 2000 Mrs. Gebman was admitted to practice law in the State of New York. At all times relevant to these cases Mrs. Gebman was employed by Bear Sterns, Citigroup, or another investment bank. As of December 31, 2007, neither Mr. Gebman nor Mrs. Gebman had attained the age of 59½.

Petitioners timely filed a joint Form 1040, U.S. Individual Income Tax Return, for 2007. On the tax return they reported Mrs. Gebman's wages of

---

[5](...continued)
addressed potential conflicts of interest of petitioners' former attorneys.

[*5] $129,515, her taxable interest of $238, and her dividends of $888. Petitioners attached to the joint return a Schedule E on which they reported, among other items, a $111,565 loss comprising $109,145 of expenses connected with the rental of three real properties that reportedly produced no income for that year and a $2,420 nonpassive loss from "NYNET CORP". The Schedule E expenses remaining in dispute are:

| Expense | Amount in dispute |
|---|---|
| Auto and travel | $1,000 |
| Insurance | 1,285 |
| Insurance | 1,310 |
| Legal and professional fees | 1,500 |
| Legal and professional fees | 2,750 |
| Other | 510 |
| Other | 963 |
| Depreciation or depletion | 836 |
| Depreciation or depletion | 11,201 |
| Repairs | 7,330 |
| Mortgage interest paid to banks | 19,263 |

[*6]

|  |  |
|---|---|
| Mortgage interest paid to banks | 16,277 |
| Taxes[1] | 4,967 |
| Nonpassive loss from Schedule K-1 | 2,420 |
| Total | 71,612 |

[1]The $4,967 claimed for real estate taxes was reclassified by respondent from Schedule E to Schedule A, Itemized Deductions.

Petitioners claimed an NOL carryforward of $1,439,867 for 2007 but did not attach any statement describing or computing that amount. The claimed NOL is based on a Form 1040X, Amended U.S. Individual Income Tax Return, petitioners filed on April 23, 2007, for the tax year 2003. No election to waive the carryback was filed. Petitioners claim the NOL from the disposition of a property in Brooklyn, New York (property). Before 2002 the property had been owned by Mrs. Gebman. In 2002, through a foreclosure or a similar event, Mrs. Gebman disposed of the property. The disposition was reported on petitioners' original 2003 tax return. On the amended 2003 tax return petitioners reported what they allege is the appreciation of the property between the date of the disposition of the property in 2002 (or, as petitioners reported, in 2003) and 2007. Petitioners assert that the appreciation is $1,439,867, which they claim they are entitled to deduct.

[*7]   In the 2007 tax return petitioners also reported IRA distributions of $520,289 to Mrs. Gebman from her IRAs but reported only $309,863 as the taxable amount.  Similarly, petitioners reported pensions and annuities distributions of $418,415 but reported only $39,869 as the taxable amount.[6]

Petitioners reported for 2007 adjusted gross income of negative $1,085,809 and tax of $100.  On May 5, 2008, respondent issued to petitioners the claimed refund of $12,067, as petitioners claimed withholding, a child tax credit, and excess Social Security payments totaling that amount.

Mr. Gebman did not have a paying job during the years at issue and earned no income.  He managed, controlled, and collected rent from their jointly owned properties.

On March 22, 2012, respondent sent petitioners two notices of deficiency-- one for 2007 through 2009 and one for 2010.  On March 15, 2016, respondent sent

_____

[6]Petitioners attached to their joint 2007 tax return Form 5329, Additional Taxes on Qualified Plans (Including IRAs) and Other Tax-Favored Accounts.  In part I of the form they reported (1) $168,648 as "Early distributions included in income"; (2) $167,648 thereof as "not subject to the [10%] additional tax" imposed by sec. 72(t) because of exception "12" (Other); (3) $1,000 as the amount subject to the 10% additional tax; and (4) $100 as the amount of the 10% additional tax.  Petitioners did not explain why the early distributions were reported on Form 5329 as $168,648 when Form 1040 reported $309,863 of taxable IRA distributions and $39,869 of taxable pension and annuities distributions or otherwise report how they arrived at only $1,000 of distributions subject to the additional tax.

[*8] petitioners one notice of deficiency for 2012 through 2014. In the notices respondent: (1) disallowed the deductions claimed on Schedule E for 2007, (2) disallowed the NOL deduction for tax years 2007 through 2010 and tax years 2012 through 2014, and (3) increased petitioners' income by $210,423 of IRA distributions and determined they are liable for the 10% additional tax imposed by section 72(t) on the IRA distributions for 2007. Respondent further determined that petitioners were liable for the accuracy-related penalties under section 6662(a) for tax years 2007 through 2010 and tax years 2012 through 2014.

On June 21, 2012, petitioners timely filed a petition with this Court for tax years 2007 through 2010. On June 15, 2016, petitioners timely filed a petition with this Court for tax years 2012 through 2014. On October 27, 2016, Mrs. Gebman filed a Form 8857, Request for Innocent Spouse Relief, with respondent, requesting relief from joint and several liability.[7]

---

[7]On August 28, 2018, Mrs. Gebman filed a motion for leave to file amendment to petition and lodged an amendment to petition for taxable years 2012, 2013, and 2014. In that amendment to petition, Mrs. Gebman alleged that she is entitled to relief under sec. 6015(b) and (f). On September 12, 2018, respondent filed a response opposing Mrs. Gebman's motion.

**[\*9]**                                       OPINION

## I.    Burden of Proof

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving them erroneous. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioners do not contend, and the evidence does not establish, that the burden of proof shifts to respondent under section 7491(a) as to any issue of fact. Respondent bears the burden of production, and petitioners bear the burden of persuasion, with respect to the accuracy-related penalties under section 6662. See sec. 7491(c).

## II.   Schedule E Deductions

Tax deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). This burden requires the taxpayer to demonstrate that the claimed deductions are allowable pursuant to some statutory provision and to substantiate the expenses giving rise to the claimed deductions by maintaining and producing adequate records that enable the Commissioner to determine the taxpayer's correct liability. Sec. 6001; Higbee v. Commissioner, 116 T.C. 438,

**[\*10]** 440 (2001); <u>Hradesky v. Commissioner</u>, 65 T.C. 87, 89-90 (1975), <u>aff'd per curiam</u>, 540 F.2d 821 (5th Cir. 1976).

Petitioners have set forth no specific facts concerning, and they have provided no documentation to substantiate, their claimed Schedule E deductions. As to each of these items, they do no more than allege that they incurred these costs. Respondent repeatedly and unsuccessfully requested production of documents substantiating each category of claimed expense deductions. Because petitioners have failed to carry their burden of proving their entitlement to the claimed Schedule E deductions for 2007, we sustain all of these adjustments determined in the notice of deficiency.

III.    Net Operating Loss

A taxpayer may generally deduct, as an NOL for a taxable year, an amount equal to the sum of the NOL carryovers and carrybacks to that year. Sec. 172(a). A taxpayer claiming an NOL deduction must file with his return "a concise statement setting forth the amount of the * * * [NOL] deduction claimed and all material and pertinent facts relative thereto, including a detailed schedule showing the computation of the * * * [NOL] deduction." Sec. 1.172-1(c), Income Tax Regs. Petitioners bear the burden of establishing both the existence of NOLs for prior years and the NOL amounts that may properly be carried forward to the years

[*11] at issue. See Rule 142(a); Keith v. Commissioner, 115 T.C. 605, 621 (2000). Petitioners have satisfied none of these requirements. They did not attach to any of their returns a concise statement including material and relevant facts or a detailed schedule showing computation of the NOL amount. The NOL deduction petitioners claimed for 2007 allegedly represented the carryforward of losses petitioners had incurred in 2003. They offered no evidence that they had sustained bona fide losses during 2003, apart from submitting copies of the tax returns on which they reported those losses. Merely reporting a loss on a tax return does not substantiate it. See Coburn v. Commissioner, T.C. Memo. 2014-113, at *8 ("A taxpayer's return is merely a statement of the taxpayer's position and cannot be used to substantiate a deduction."); see also Gould v. Commissioner, 139 T.C. 418, 447 (2012), aff'd, 552 F. App'x 250 (4th Cir. 2014). Petitioners did not substantiate the NOL or address it at trial or in their posttrial brief. Petitioners have produced only unpersuasive testimony to attempt to substantiate their entitlement to an NOL carryover to 2007. Because petitioners have failed to prove that an allowable NOL existed, we will sustain respondent's disallowance of the NOL deductions for the years at issue.

**[*12]** IV.   <u>Taxability of IRA Distribution and Additional Tax Under Section 72(t)</u>

Generally, section 408(d)(1) provides that any amount distributed from an IRA is includible in gross income by the recipient in the manner provided under section 72.  The recipient of an IRA distribution can exclude from gross income any amount paid or distributed from an IRA if the full amount is subsequently rolled over into a qualifying IRA not later than the 60th day after the recipient received the payment or distribution.  Sec. 408(d)(3)(A).  Such distributions and repayments are commonly referred to as "rollover contribution[s]".  Sec. 408(d)(3).

Petitioners reported on their 2007 tax return that they received IRA distributions of $520,289.  However, petitioners reported only $309,863 as taxable distributions on their tax return.  Mrs. Gebman testified that the IRA distributions were "double counted".  However, Mrs. Gebman offered no testimony or documents in support of her contention.  Indeed, she did not even state how much was double counted or what the correct number might be.  Moreover, petitioners' 2007 tax return contradicts any double counting claim because it reports the asserted distributions, just not as taxable distributions.  Accordingly, the $210,423 of distributions is includible in petitioners' gross income for 2007.

**[*13]** Section 72(t) imposes an additional 10% tax on early distributions from a qualified retirement plan, including an IRA, made to a taxpayer before she attains the age of 59½. See secs. 72(t)(1), (2)(A)(i), 4974(c)(4). Mrs. Gebman had not attained the age of 59½ when she received the distributions at issue. The IRA distributions were therefore an early distribution subject to the additional 10% tax. The additional 10% tax, however, does not apply if certain enumerated exceptions are satisfied. See sec. 72(t)(2). Petitioners do not assert any of these exceptions, and we find on the record that none of the enumerated statutory exceptions applies to petitioners. Accordingly, we sustain respondent's determination that the section 72(t) additional tax applies to the total amount of the IRA distributions for 2007.

V.    Section 6015 Relief

Generally, married taxpayers may elect to file joint Federal income tax returns. Sec. 6013(a). After the election is made, each spouse is jointly and severally liable for the entire tax due for that year. Sec. 6013(d)(3). Pursuant to section 6015(a) and (f), however, a taxpayer may seek relief from joint liability under section 6015(b), (c), and (f). Since petitioners are still married (and never legally separated or lived apart), the requirements of section 6015(c) are not satisfied and we must look to subsections (b) and/or (f) in turn. Except as otherwise provided, the requesting spouse bears the burden of proving that he or

[*14] she is entitled to section 6015 relief.  Rule 142(a); Alt v. Commissioner, 119

T.C. 306, 311 (2002), aff'd, 101 F. App'x 34 (6th Cir. 2004).

To qualify for relief pursuant to section 6015(b), the requesting spouse must

establish that:  (1) a joint return has been made for a taxable year; (2) on that

return there is an understatement of tax attributable to erroneous items of the non-

requesting spouse; (3) the requesting spouse did not know and had no reason to

know of the understatement at the time the return was signed; (4) taking into

account all facts and circumstances, it is inequitable to hold the requesting spouse

liable for that year's deficiency in tax attributable to the understatement; and

(5) the requesting spouse timely elects relief under section 6015(b).  Sec.

6015(b)(1); sec. 1.6015-2(a), Income Tax Regs.  These conditions are stated in the

conjunctive, and the taxpayer must satisfy all five in order to be awarded relief.

Alt v. Commissioner, 119 T.C. at 313.

Mrs. Gebman does not satisfy the second condition under section 6015(b).

This condition requires the requesting spouse to show that the understatement of

tax is attributable to erroneous items of the nonrequesting spouse.  Sec.

6015(b)(1)(B); sec. 1.6015-2(a)(2), Income Tax Regs.  Generally, an erroneous

item is attributed to the individual whose activities gave rise to the item.  Sec.

1.6015-1(f)(1), Income Tax Regs.  In deciding attribution of erroneous items, the

**[\*15]** Court has attributed items to the spouse who wrongfully reported or claimed the items on the return. See Kellam v. Commissioner, T.C. Memo. 2013-186. Here, all income items reported on petitioners' tax returns for the years at issue were Mrs. Gebman's, and not Mr. Gebman's.

Moreover, Mrs. Gebman introduced no evidence to show that she lacked the requisite knowledge of the understatement. Mrs. Gebman is a licensed attorney. Even a cursory review of each year's tax return before signing would have revealed that the return reported a large negative income and caused a reasonably prudent individual in the shoes of Mrs. Gebman to question the accuracy of the return. Moreover, it is not inequitable to hold Mrs. Gebman responsible for tax liabilities generated by her items of income. We thus hold that Mrs. Gebman is not entitled to the requested relief from joint and several liability under section 6015(b) for the years at issue.

If a requesting spouse is not eligible for relief under section 6015(b) or (c), he or she may be eligible for relief under section 6015(f). Sec. 6015(f)(2). Section 6015(f) provides that a requesting spouse may be relieved from joint and several liability if, "taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either)". For determinations by the Commissioner, the statute

**[*16]** directs that equitable relief be granted "[u]nder procedures prescribed by the Secretary". Sec. 6015(f). Rev. Proc. 2013-34, 2013-43 I.R.B. 397, superseding Rev. Proc. 2003-61, 2003-2 C.B. 296, provides guidelines that the Commissioner follows in determining whether a requesting spouse qualifies for equitable relief under section 6015(f). Mrs. Gebman has not even addressed the criteria. It may be inferred, therefore, that she does not meet them, and the facts confirm that. Moreover, it would not be equitable to relieve Mrs. Gebman from liability on her own items of income while leaving Mr. Gebman responsible for paying the tax. Nor would it be equitable to have respondent try to collect the joint liability only from Mr. Gebman, who has professed his intention to file for bankruptcy.

Although Mrs. Gebman argues that Mr. Gebman was in charge of filing the tax returns and that he assured her that he was taking care of the cases before this Court, she did not provide any additional evidence that she is entitled to relief. Mrs. Gebman does not allege that Mr. Gebman, in any way, prevented her from reviewing the tax returns, was not interested in her views about the cases, or otherwise discouraged her participation in the cases. Moreover, she admits to voluntarily delegating tax return preparation to her husband. Mrs. Gebman's actions lead to the conclusion that she may have simply chosen to turn a blind eye to the tax returns. Furthermore, there is nothing in the record that indicates Mr.

[*17] Gebman tried to deceive or hide anything from Mrs. Gebman. He never concealed any financial dealings, bank accounts, or business operations from her. Finally, Mr. Gebman and Mrs. Gebman are still married and have continuously lived together. Mrs. Gebman did not provide any evidence that persuades us that she meets the requirements for relief. Accordingly, Mrs. Gebman is not entitled to relief under section 6015(f), and we will deny her motion for leave to file amendment to petition filed August 28, 2019.

## VI.    Section 6662(a) Penalties

Section 6662(a) and (b)(1) and (2) imposes a 20% accuracy-related penalty on any underpayment of Federal income tax which is attributable to negligence or disregard of rules or regulations or a substantial understatement of income tax. Section 6662(c) defines negligence as including any failure to make a reasonable attempt to comply with the provisions of the Code and defines disregard as any careless, reckless, or intentional disregard. See sec. 1.6662-3(b)(1) and (2), Income Tax Regs. An understatement of income tax is substantial if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).[8]

---

[8]In the case of an NOL carryover, the penalty for negligence or disregard of rules or regulations applies to any portion of an underpayment for the year to

(continued...)

**[\*18]** Under section 7491(c) respondent has the burden of production with respect to the accuracy-related penalty. See Higbee v. Commissioner, 116 T.C. at 446. To satisfy the burden of production under section 7491(c), respondent must produce evidence showing, inter alia, that respondent's representatives complied with section 6751(b)(1). See Graev v. Commissioner, 149 T.C. 485 (2017), supplementing and overruling in part 147 T.C. 460 (2016). A penalty approval form in the record shows that respondent's representatives timely complied with section 6751(b)(1). Petitioners' tax for the relevant years was understated by the greater of 10% of the tax required to be shown on each return or $5,000 as the result of deductions claimed for expenses. Thus, respondent has shown a substantial understatement of income tax for each year. The evidence also establishes negligence in that petitioners have failed to make a reasonable attempt to comply with the provisions of the Code and failed to keep adequate books and

---

[8](...continued)
which the NOL is carried that is attributable to negligence or disregard of rules or regulations in the year in which the carryback or carryover of the loss arose. Sec. 1.6662-3(d)(1), Income Tax Regs. Similarly, the substantial understatement penalty applies to any portion of an underpayment for a year that is attributable to a "tainted item" in the loss year. Sec. 1.6662-4(c)(1), Income Tax Regs. The determination of whether an understatement is "substantial" for a carryover year is made with respect to the return for that year. Id. A "tainted item" is any item for which there is neither substantial authority nor adequate disclosure with respect to the loss year. Sec. 1.6662-4(c)(3)(i), Income Tax Regs.

**[\*19]** records, instead espousing various frivolous and groundless arguments. Respondent has met the burden of production in this case. As respondent has done so, it is petitioners' burden to establish that the imposition of the penalty is not appropriate. See Higbee v. Commissioner, 116 T.C. at 447.

Section 6664(c)(1) provides an exception to the section 6662(a) penalty to the extent it is shown that there was reasonable cause for any portion of the underpayment and the taxpayer acted in good faith. The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to assess his or her proper tax liability. Id. Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in view of the taxpayer's experience, knowledge, and education. Id.

Petitioners did not make any arguments on brief or at trial regarding the applicability of the reasonable-cause exception. And the record does not show that the reasonable-cause exception applies in these cases. Therefore, we sustain respondent's determination that petitioners are liable for accuracy-related penalties for the years at issue.

[*20] VII.   Section 6673(a)(1) Penalty

At the conclusion of the trial respondent's counsel orally moved to impose the penalty under section 6673(a).  Section 6673(a)(1) authorizes this Court to impose a penalty not in excess of $25,000 "[w]henever it appears to the Tax Court" that a taxpayer has instituted or maintained a proceeding "primarily for delay" or has taken a position that is "frivolous or groundless".  The purpose of section 6673 is to compel taxpayers to conform their conduct to settled tax principles and to deter the waste of judicial resources.  See Coleman v. Commissioner, 791 F.2d 68, 71 (7th Cir. 1986); Bruhwiler v. Commissioner, T.C. Memo. 2016-18, at *10.  The Court has provided ample warnings to petitioners of the potential implications of continuing to assert frivolous and groundless arguments.  For example, petitioners' various frivolous arguments include that they are victims of criminal conspiracies and that they request alleviation of restraint of trade.  During trial petitioners persisted in asserting frivolous and groundless arguments, despite previous warnings from respondent's counsel and this Court.[9]  In the exercise of our discretion, we conclude that a penalty under

_____

[9]At trial, with Mrs. Gebman's silent assent Mr. Gebman spoke about the Federal Reserve; spoke about the activities of Benjamin Strong, who directed the original World War I gold transfer to London; told the story about America's economic hedging; requested that this Court refer these cases to the Federal

(continued...)

**[*21]** section 6673(a)(1) is appropriate. Accordingly, we will order petitioners to pay to the United States a penalty of $2,500 pursuant to section 6673(a)(1).

We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Appropriate orders and decisions</u>

<u>will be entered</u>.

---

[9](...continued)
Bureau of Investigation; addressed the Federal Election Committee and the State Board of Elections; and talked about the Supreme Court and Teddy Roosevelt. Mr. Gebman advanced many other similar arguments during trial.